UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

FRANK S. RANALLO, JR.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

**DECISION AND ORDER**

1:18-CV-00424 EAW



## **INTRODUCTION**

Represented by counsel, plaintiff Frank S. Ranallo, Jr. ("Plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 10; Dkt. 14). For the reasons discussed below, the Commissioner's motion (Dkt. 14) is granted in part and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed his applications for DIB and SSI on April 23, 2013. (Dkt. 6-2 at 26; Dkt. 6-3 at 2).[1] In his applications, Plaintiff alleged disability beginning May 1, 2012, due to "seizures, left hand injury, herniated disc in back, head and neck pain, numbness in toes and left leg, halucinations [sic], incontanance [sic], facial ticks [sic], involuntary muscle movement." (Dkt. 6-3 at 2). Plaintiff's applications were initially denied on January 21, 2014, and upon reconsideration on June 24, 2014. (Dkt. 6-2 at 26). A videoconference hearing was held before administrative law judge ("ALJ") Robert Hodum on May 10, 2016, with Plaintiff appearing in Buffalo, New York, and the ALJ presiding from Memphis, Tennessee. (*Id.* at 26, 44-81). On June 30, 2016, the ALJ issued an unfavorable decision. (*Id.* at 23-43). Plaintiff requested Appeals Council review; his request was denied on February 5, 2018, making the ALJ's determination the Commissioner's final decision. (*Id.* at 2-6). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera*

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

*v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant does not

have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* §§ 404.1520(d), 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id.* §§ 404.1509, 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* §§ 404.1520(e), 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* §§ 404.1520(g), 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. §§ 404.1520 and 416.920. Initially, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2015. (Dkt. 6-2 at 28). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 1, 2012, the alleged onset date. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of "degenerative disc disease of the lumbar spine and pseudoseizures." (*Id.*). The ALJ further found that Plaintiff's medically determinable impairment of polysubstance abuse was non-severe. (*Id.* at 28-29).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 29).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), "except that [Plaintiff] is limited to work involving only occasional climbing and balancing and no exposure to seizure hazards such as unprotected heights or dangerous machinery." (*Id.* at 29-36).

At step four, the ALJ found that Plaintiff was capable of performing his past relevant work as a mortgage loan officer and a production supervisor. (*Id.* at 36). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.*).

## II. The ALJ's Physical RFC Finding is Supported by Substantial Evidence

Plaintiff asks the Court to reverse or, in the alternative, remand this matter to the Commissioner, arguing that the ALJ's physical RFC finding is unsupported by substantial evidence. In support of this argument, Plaintiff contends that (1) it was inappropriate for the ALJ to rely upon the opinion of non-examining state reviewing physician Dr. Louis Saddler and (2) the ALJ failed to perform a function-by-function analysis of Plaintiff's physical RFC. The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

### A. Reliance on Dr. Saddler's Opinion

Plaintiff first argues that the ALJ erred in relying on the opinion of Dr. Saddler, a non-examining source, and further contends that Dr. Saddler's opinion was inconsistent with Plaintiff's physical limitations.

It is generally true that "[n]on-examining opinions do not carry the same weight as opinions from those who cared for a claimant." *Schnabel v. Berryhill*, No. 1:17-CV-00190-MAT, 2019 WL 622138, at *6 (W.D.N.Y. Feb. 14, 2019). However, contrary to Plaintiff's argument, "the opinion of a non-examining medical source can constitute substantial evidence where it is consistent with the other medical record evidence." *Crouch o/b/o N.U.J. v. Berryhill*, No. 17-CV-1227, 2019 WL 1315053, at *4 (W.D.N.Y. Mar. 22, 2019) (quotation omitted); *see also Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Cassandra K. v. Comm'r of Soc. Sec.*, No. 5:18-CV-86 (ATB), 2019 WL 1115673, at *6

(N.D.N.Y. Mar. 11, 2019) ("A well-supported opinion from a consultative examining physician, a non-examining state agency doctor, and/or a medical expert may also provide substantial evidence supporting an ALJ's decision.").

In this case, Dr. Saddler reviewed Plaintiff's medical records and opined that he was capable of the following: occasionally lifting or carrying 20 pounds; frequently lifting or carrying 10 pounds; standing or walking for about six hours in an eight-hour workday; sitting for about six hours in an eight-hour workday; unlimited pushing and pulling; occasionally climbing ramps or stairs; occasionally climbing ladders, ropes, or scaffolds; occasionally balancing; unlimited stooping, kneeling, crouching, and crawling. (Dkt. 6-3 at 50-51). Dr. Saddler further indicated that Plaintiff had no manipulative, visual, communicative, or environmental limitations, but that he should avoid hazards such as machinery and heights. (*Id.* at 51).

The ALJ discussed Dr. Saddler's opinion in his written determination and adopted Dr. Saddler's assessment of Plaintiff's physical RFC in its entirety. (Dkt. 6-2 at 34). The ALJ explained that in doing so, he was "giv[ing] [Plaintiff] the benefit of the doubt," because the "cumulative evidence" of record demonstrated that Plaintiff did not have a "genuine seizure disorder." (*Id.*).

The Court finds no error in the ALJ's adoption of Dr. Saddler's opinion. As the ALJ's written determination sets forth in detail, there is overwhelming evidence that Plaintiff does not suffer from a genuine seizure disorder. The Court will not repeat the full details of the ALJ's thorough analysis here, but will briefly summarize the facts supporting his conclusion. Plaintiff's medical records show that although he frequently claimed to

have suffered from seizures, the following facts directly contradict this claim: (1) long-term video/EEG monitoring of Plaintiff did not show epileptic activity; (2) Plaintiff's treating physicians documented drug-seeking behavior on numerous occasions when he claimed to have suffered from seizures; (3) Plaintiff's treating physicians noted "multiple inconsistencies" in his medical history and recorded that he "fabricated a story" regarding the placement of his Fentanyl patch; (4) Plaintiff's treating physicians indicated there was a "volitional component" to Plaintiff's claimed epileptic events; (5) multiple CT scans of Plaintiff's brain were normal; (6) in 2015, Plaintiff's treating physician stated that Plaintiff had "never been known to have an actual medical seizure"; and (7) in 2016, Plaintiff's treating physician stated that "no true seizure disorder" had ever been documented with respect to Plaintiff. (*See* Dkt. 6-7 at 207-213; Dkt. 6-8 at 42, 151, 157, 340-41, 354, 359-63; 373; Dkt. 6-9 at 184-85).

Notwithstanding this evidence that Plaintiff does not suffer from true, involuntary seizures, Dr. Saddler (and the ALJ in turn) afforded Plaintiff the benefit of the doubt and incorporated into his physical RFC finding precautions related to Plaintiff's claimed seizures, including the avoidance of hazards such as heights and machinery. The ALJ's adoption of Dr. Saddler's opinion in this regard was, if anything, generous to Plaintiff, and Plaintiff has failed to identify any prejudicial error in this regard. *See Keppeler v. Colvin*, No. 5:13-CV-1197 MAD, 2015 WL 1472094, at *5-7 (N.D.N.Y. Mar. 31, 2015) (finding remand not warranted where ALJ relied on state agency reviewing physician's opinion and further gave the plaintiff the "benefit of the doubt" regarding her claimed impairments).

Dr. Saddler's opinion is further fully consistent with the evidence of record regarding Plaintiff's claimed back impairment. As the ALJ noted in his written determination, although there was evidence of mild degenerative changes in Plaintiff's spine, there were no laboratory records showing any pathology that would be expected to cause significant chronic back pain, Plaintiff denied having back pain on multiple occasions, and multiple treating physicians noted that Plaintiff had normal gait and strength and a full range of motion in his back with normal sensation and reflexes. (Dkt. 6-2 at 32-33; *see also* Dkt. 6-8 at 64, 80, 104; Dkt. 6-9 at 14, 18, 44, 85, 122, 286-87; Dkt. 6-10 at 29, 56). This medical evidence is fully consistent with Dr. Saddler's opinion, adopted by the ALJ, that Plaintiff was capable of performing the requirements of light work (*i.e.* lifting no more than 20 pounds at a time, frequently lifting or carrying objects weighing up to 10 pounds, standing or walking for approximately six hours in an eight-hour work day).

In sum, the Court finds no error in the ALJ's reliance on Dr. Saddler's opinion. As discussed above, Dr. Saddler's assessment of Plaintiff's physical impairments was fully consistent with the medical evidence of record. If anything, Dr. Saddler and the ALJ interpreted the medical evidence in the manner most favorable to Plaintiff, incorporating restrictions based on his claimed seizures notwithstanding the fact that Plaintiff's own treating physicians indicated that he did not suffer from a genuine seizure disorder. Remand is not warranted on this basis.

B.  **Function-by-Function Analysis**

Plaintiff's second and final argument is that the ALJ failed to perform a "function-by-function" analysis of his ability to perform the demands of light work and that this

requires remand. (Dkt. 24 at 22-24).

The Commissioner's regulations "require that the ALJ include in his RFC assessment a function-by-function analysis of the claimant's functional limitations or restrictions and an assessment of the claimant's work-related abilities on a function-by-function basis." *Karabinas v. Colvin*, 16 F. Supp. 3d 206, 216 (W.D.N.Y. 2014) (quotation omitted). However, the Second Circuit has held that "an ALJ need not expressly discuss a claimant's capacity to perform each work-related function before classifying the claimant's RFC in exertional terms," that "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence," and that "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence . . . remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

In this case, the ALJ engaged in a thorough review of Plaintiff's impairments and associated limitations, and explained at length the basis for his conclusions, all of which are supported by the evidence of record. Moreover, the ALJ appropriately adopted Dr. Saddler's opinion in full, and Dr. Saddler set forth a function-by-function assessment of Plaintiff's capabilities. In other words, although "Plaintiff is correct that the ALJ does not list out physical capabilities in a separate function-by-function analysis, the ALJ conducted a thorough examination of Plaintiff's limitations and capabilities set forth in the record" prior to determining Plaintiff's RFC. *Trimm v. Colvin*, No. 7:13-CV-00961 MAD, 2015

WL 1400516, at *12 (N.D.N.Y. Mar. 26, 2015) (rejecting argument that remand was required because the ALJ did not perform a function-by-function analysis). Under these circumstances, Plaintiff has not demonstrated that remand is warranted.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 14) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: June 13, 2019
      Rochester, New York